IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Zita L. Weinshienk

Civil Action No. 99-cv-870-ZLW-CBS

METABOLITE LABORATORIES, INC.,
a Colorado corporation, and
COMPETITIVE TECHNOLOGIES, INC.,
a Delaware corporation,

      Plaintiffs,

v.

LABORATORY CORPORATION OF AMERICA HOLDINGS
d/b/a LABCORP, a Delaware corporation,

      Defendant.

_____

ORDER
_____

The matters before the Court are (1) Plaintiffs' Motion For Court To Issue Draft

On Letter Of Credit, (2) Defendant's Motion For Clarification Of Stay Order And Related

Letter Of Credit, (3) Defendant's Motion For Clarification Of Injunction, and (4)

Plaintiffs' Motion For Order To Show Cause.  The Court has read the moving and

responding papers and has considered carefully the parties' arguments and the

relevant legal authority.

**I.**    **Letter of Credit**

The jury returned a verdict in this case on November 20, 2001, awarding patent

infringement damages to Plaintiff Competitive Technologies, Inc. (CTI), in the amount

of $1,019,365.01, and breach of contract damages to Plaintiff Metabolite Laboratories,

Inc. (Metabolite) in the amount of $3,652,724.61.[1]  Judgment was entered on

December 3, 2001, followed by an Amended Judgment on November 20, 2002.  After

entry of judgment, Plaintiffs filed a motion pursuant to section 283 of the Patent Act, 35

U.S.C. § 283, requesting an order permanently enjoining LabCorp from performing the

homocysteine-only test.  The Court granted Plaintiffs' motion for permanent injunction

on November 20, 2002.  Defendant Laboratory Corporation of America Holdings

(LabCorp) then moved for an emergency stay of the injunction pending its appeal of the

case to the United States Court of Appeals for the Federal Circuit.

        This Court held a hearing on LabCorp's motion to stay the injunction on

November 26 and 27, 2002.  At the outset of the hearing, the Court voiced concern that

patient care would be endangered if the testing were to be halted by an injunction.[2]

The Court went on to address the royalties that would be incurred during a stay of the

injunction, indicating that the parties should try to reach some reasonable agreement

as to a royalty to be paid during the stay period, and voicing doubt that the Court itself

could or should impose such a payment absent the parties' agreement.[3]  The License

Agreement contained two different licenses:  a patent sublicense in exchange for a 6%

royalty, and a know-how license in exchange for a 21.5% royalty.  LabCorp's counsel

maintained throughout the November 26 and 27, 2002, hearing that while LabCorp was

willing to pay CTI the 6% patent royalty, Metabolite had no right to any royalty payment

---

[1]The Court will not recite herein the full factual and procedural background of this case, with which the parties are familiar.

[2]See November 26, 2002, Hearing Transcript at 3:17-22.

[3]See id. at 34:17-37:13.

for tests performed during a stay of the injunction because the injunction was issued pursuant to 35 U.S.C. § 283, which authorizes injunctions to prevent the violation of patent rights, and Metabolite is not a patent holder, but rather a patent licensee.[4] LabCorp's counsel noted that Metabolite had never requested an injunction premised on a breach of the License Agreement, and that there had been no presentation of evidence concerning future breach of contract damages at trial.[5] LabCorp's counsel indicated that Metabolite would have to bring another lawsuit in order to recover any breach of contract damages it incurred after trial.[6] The Court agreed that Metabolite was not entitled to an injunction under the Patent Act, and asked Plaintiffs' counsel for authority under which Metabolite could be entitled to an injunction.[7] Plaintiffs' counsel did not provide, and to date has not provided, any such authority. Rather, Plaintiffs' counsel acknowledged that the issue of ongoing payment of the 21.5% royalty was "a challenging legal question."[8] The Court stated that if the Federal Circuit affirmed the jury verdict, then the "real solution would be" for the parties to work out a license agreement, rather than having Metabolite come into court every two or three years with a new breach of contract claim. LabCorp's counsel agreed.[9] The Court ultimately

---

[4]See id. at 18:13-19:18, 31:16-32:5; November 27, 2002, Hearing Transcript at 4:11-20, 31:16-23.

[5]See November 27, 2002, Hearing Transcript at 9:11-19.

[6]See id. at 10:6-8.

[7]See id. at 6:14-23, 8:7-21.

[8]See id. at 24:23-25.

[9]See id. at 12:3-12.

ordered from the bench that LabCorp pay the 6% royalty and put the 21.5% royalty into an escrow or trust account pending appeal.[10] In the context of the 21.5% royalty the Court stated that "there are some issues that the Circuit is going to have to decide about this breach of contract case.  And maybe one of the issues is going to be issues (sic) concerning future injunctive relief.  I don't know.  But I think that's an iffy area.  So let's put that someplace where it will be safe and that will satisfy defendant."[11]

On January 13, 2003, the Court entered a Stipulated Order Staying Injunction Pending Appeal (Stipulated Stay Order) which modified the Order issued at oral argument.  The Stipulated Stay Order ordered that LabCorp was to pay a 6% royalty to CTI for tests performed from November 1, 2002, though final disposition of the case, and was to provide Metabolite with an accounting of 21.5% of the Net Sales attributable to the tests LabCorp performed after November 1, 2001.  The Stipulated Stay Order stated that LabCorp will "secure its obligation to pay such 21.5% amount to Metabolite (in the event it is held liable therefor in this case) with a bond or letter of credit . . . ."  The final paragraph of the Stipulated Stay Order stated that the order "does not compromise or otherwise affect any claim for damages, or defenses thereto, for assays performed by LabCorp subsequent to the date of the Special Verdict in this case or during the pendency of the appeal or any remand."

---

[10]See id. at 7:20-8:12, 35:11-36:15.

[11]Id. at 36:10-15.

The Federal Circuit affirmed the jury verdict and Judgment on June 8, 2004.[12]
The Federal Circuit's opinion did not address the issue of an ongoing royalty payment
to Metabolite after entry of judgment.

Plaintiffs argue that all of the conditions of the letter of credit now have been
satisfied and that the Court therefore should issue a draft on the full amount of the
letter of credit.  However, one of the requirements for release of funds under the letter
of credit is that this Court has issued a final judgment or order stating that "the amount
of the draft stated above is now due and owing to Metabolite Laboratories."  The Court
has never issued such a judgment or order; to the contrary, whether LabCorp can be
liable for a 21.5% royalty to Metabolite for alleged breaches of the License Agreement
after the entry of judgment has never been resolved, either by this Court or by the
Federal Circuit.

LabCorp argues that the License Agreement cannot form the basis for
continuing  breach of contract damages after the date of the judgment because the jury
found that the License Agreement was terminated.  Plaintiffs argue that only the 6%
patent license was terminated, not the 21% know-how license.  Question No. 5 on the
Special Verdict Form asked:

> Do you find, by a preponderance of the evidence, that
> LabCorp breached its license agreement by terminating it
> with respect to its performance of the Abbott test? [Answer:
> yes.]

---

[12]Metabolite Laboratories, Inc. v. Laboratory Corporation of America Holdings, 370 F.3d 1354
(Fed. Cir. 2004).

The jury had to answer "yes" to Question No. 5 in order for it also to find that LabCorp's performance of the Abbott test constituted patent infringement, because a licensee cannot infringe.[13]   However, the jury needed only to find that the *patent portion* of the License Agreement had been terminated to find infringement.   The jury did not have to find that the *know-how portion* of the License Agreement, with its corresponding 21.5% royalty payment, was terminated in order to find infringement.   Similarly, the jury only had to find that LabCorp *breached* its obligation to pay Metabolite the 21.5% royalty in order to award damages to Metabolite; it did not have to find that that portion of the License Agreement was *terminated* in order to do so.[14]   It is clear that LabCorp could terminate something less than the entire License Agreement:   Section 4.02 of the License Agreement itself recognizes that LabCorp could "terminate this Agreement with respect to a particular licensed assay if . . . a more cost effective commercial alternative is available that does not infringe a valid and enforceable claim of the Licensed Patents[.]"

Further, as Plaintiffs note, because LabCorp's appellate briefs discussed only whether LabCorp had terminated the patent portion of the License Agreement, which

---

[13]See 35 U.S.C. § 271(a) (patent is infringed by one who uses it "without authority").   See also, e.g., Milprint, Inc. v. Curwood, Inc., 562 F.2d 418, 420 (7th Cir. 1977) ("the existence of a license precludes the possibility of infringement").

[14]Although the Federal Circuit stated that "[a] material breach" of a license "constitutes termination," the authorities cited by the court in support state only that a material breach gives rise to the right to terminate.   See Metabolite, 370 F.3d at 1370 (citing Apex Pool Equip. Corp. v. Lee, 419 F.2d 556, 562 (2nd Cir. 1969); Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 217 F.3d 8, 10 (1st Cir. 2000); Restatement (Second) of Contracts § 237 (1981)).

would determine whether Plaintiffs could collect damages for infringement, the Federal Circuit did not address whether the know-how license was terminated. Thus, the Federal Circuit's determination that the License Agreement was terminated is a determination only that the patent portion was terminated, not the know-how portion. Additionally, LabCorp's own actions indicate that the entire License Agreement has not been terminated, since LabCorp continues to pay Metabolite a 21.5% royalty on other tests covered by the License Agreement.[15]

The Court thus concludes that neither the jury verdict nor the Federal Circuit opinion established that the know-how license was terminated, only that the patent license was terminated. Therefore, even though the injunction was based on the Patent Act, the conduct permitted by the Stipulated Stay Order, continued performance of the tests, could constitute a continued breach of LabCorp's obligation to pay the 21.5% royalty to Metabolite. LabCorp should have expected that if it proceeded to perform the tests during the period of the stay, and the know-how portion of the License Agreement had *not* been terminated, then LabCorp could be liable for breach of contract damages, in the form of the 21.5% royalty, stemming from those tests. Otherwise, there was no reason for the parties to agree to the accounting process set forth in the Stipulated Stay Order. However, there has never been a legal determination that LabCorp actually committed any breach after the date of the Amended Judgment, or of the amount of any resulting damages. Because there are no

---

[15]See Plaintiffs' Combined Response And Reply Regarding Letter Of Credit, Ex. 14.

claims remaining in this case, the issue of whether actions taken by LabCorp subsequent to the Amended Judgment constitute breach of contract, and the amount of damages for any such breach, cannot be resolved herein as a matter of procedure.  As a result, the Court is not able to state in this case, at this juncture, that the amount stated on the letter of credit is now "due and owing to Metabolite Laboratories."[16] However, LabCorp has filed a separate action, Case No. 04-cv-01662-ZLW-CBS, seeking "a declaratory judgment that LabCorp has not violated the Agreement with various conduct occurring since the time period covered by the Amended Judgment and occurring into the future."  Whether LabCorp committed a contract breach after the date of the Amended Judgment is appropriately resolved in Case No. 04-cv-01662-ZLW-CBS.  Thus, Plaintiffs' Motion For Court To Issue Draft On Letter Of Credit will be denied without prejudice, and Case No. 04-cv-01662-ZLW-CBS shall proceed so that the issue may be resolved therein.  Should there be a final determination in Case No. 04-cv-01662-ZLW-CBS that LabCorp did breach the know-how license after the date of the Amended Judgment, then Plaintiffs may present their request concerning the letter of credit again.

## II.    Injunction

Once the Federal Circuit mandate issued in this case on August 12, 2004, and

---

[16]Given the Court's determinations herein, it would seem that LabCorp indeed would be liable for breach of contract damages to Metabolite for homocysteine-only tests LabCorp performed *itself* after the date of the Amended Judgment.  However, again, there is no such claim for breach before the Court in this case, nor can there be, since final judgment was entered long ago.

the injunction stay was lifted, LabCorp stopped performing homocysteine-only tests itself and instead entered into an agreement with Specialty Laboratories, Inc. (Specialty), which is licensed by CTI under the '658 Patent, for Specialty to perform homocysteine-only tests referred by LabCorp.  LabCorp thereafter filed its present Motion For Clarification Of Injunction, and Plaintiffs filed their Motion For Order To Show Cause.  Both motions ask the Court to determine whether LabCorp's arrangement with Speciality violates the permanent injunction.

An injunction issued under the Patent Act "is only proper to the extent it is 'to prevent the violation of any right secured by patent.'"[17]  Enjoining "noninfringing activities must be avoided."[18]  Further, Fed. R. Civ. P. 65(d) provides that

> Every order granting an injunction . . . shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.[19]

The Court's November 20, 2002, Order on Plaintiffs' motion for permanent injunction states that "Plaintiffs seek to enjoin LabCorp from performing 'any homocysteine-only test, including without limitation homocysteine-only tests via the

---

[17]Eli Lilly and Co. v. Medtronic, Inc., 915 F.2d 670, 674 (Fed. Cir. 1990).

[18]Johns Hopkins University v. CellPro, Inc., 152 F.3d 1342, 1366 (Fed. Cir. 1998).

[19]Fed. R. Civ. P. 65(d).

Abbott method,'" and then proceeds to grant the motion.  Though Plaintiffs' motion had

also contained language requesting that "anyone on [LabCorp's] behalf" be enjoined

from performing the tests, the Court's Order does not include that additional language.

Because an injunction must describe the acts to be enjoined without reference to any

other document,[20] and ambiguities are to be resolved in favor of the enjoined party,[21]

the injunction, by its express terms, does not prevent LabCorp's reference of tests to

Specialty.  Even if the injunction were construed to prohibit testing by "anyone on

[LabCorp's] behalf," an injunction issued pursuant to the Patent Act can enjoin only

infringing conduct, and LabCorp's reference of tests to Specialty, which holds a license

from CTI to perform the tests, does not involve any infringing act that could be

enjoined.  The license agreement between CTI and Specialty expressly recognizes that

Specialty "conducts the business of a reference laboratory which performs diagnostic

assays

for . . . commercial diagnostic laboratories . . . "[22] such as LabCorp.  LabCorp may refer

the homocysteine-only test to a laboratory, such as Specialty, that is licensed under the

'658 patent without violating the permanent injunction.

 In its July 21, 2006, supplemental brief, LabCorp adds that since filing its original

---

[20]Fed. R. Civ. P. 65(d).

[21]Reliance Ins. Co. v. Mast Const. Co., 84 F.3d 372, 377 (10th Cir. 1996).

[22]LabCorp's Supplemental Brief In Support Of Its Motion To Clarify Injunction And Motion To Clarify Stay And Letter Of Credit, Ex. A-9 at 2.

motion, LabCorp has purchased Esoterix, Inc. (Esoterix), which owns a testing laboratory called Colorado Coagulation, Inc. (Colorado Coagulation) which is a licensee under the '658 Patent.  Colorado Coagulation's license agreement with CTI recognizes, like Specialty's, that Colorado Coagulation "performs diagnostic assays for . . . commercial diagnostic laboratories . . . ."[23]  LabCorp requests that the Court clarify whether the injunction permits LabCorp to perform the tests directly by relying on the Colorado Coagulation license.  For the same reasons discussed above with respect to Specialty, the Court clarifies that LabCorp may refer homocysteine-only tests to licensee Colorado Coagulation, which is LabCorp's subsidiary and thus a separate entity,[24] without violating the injunction.  However, LabCorp did not succeed to any rights under the CTI-Colorado Coagulation license agreement merely by purchasing Esoterix,[25] and thus LabCorp may not itself perform homocysteine-only tests without violating the injunction.

Accordingly, it is

ORDERED that Plaintiffs' Motion For Court To Issue Draft On Letter Of Credit (Doc. No. 345) is denied without prejudice.  It is

---

[23]Id., Ex. A-11 at 2.

[24]See Benton v. Cameco Corp., 375 F.3d 1070, 1081 (10th Cir. 2004) (quoting Quarles v. Fuqua Indus., Inc., 504 F.3d 1358, 1362 (10th Cir. 1974)) (a "parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity.").

[25]There is no evidence before the Court that Colorado Coagulation merged with LabCorp such that LabCorp, as a successor corporation, would succeed to Colorado Coagulation's contract rights.  See Colo. Rev. Stat. § 7-90-204(1)(a).

FURTHER ORDERED that Defendant's Motion For Clarification Of Stay Order And Related Letter Of Credit (Doc. No. 338) is granted to the extent set forth herein, and the issue of whether LabCorp breached the License Agreement after the date of the Amended Judgment shall be resolved in Case No. 04-cv-01662-ZLW-CBS.  It is

FURTHER ORDERED that Defendant's Motion For Clarification Of Injunction (Doc. No. 339) is granted to the extent set forth herein, and (1) LabCorp may refer the homocysteine-only test to a laboratory, such as Specialty, that is licensed under the '658 patent without violating the permanent injunction issued in this case, and (2) LabCorp may refer homocysteine-only tests to Colorado Coagulation, LabCorp's subsidiary and thus a separate entity, without violating the injunction, but LabCorp may not itself perform homocysteine-only tests without violating the injunction.  It is

FURTHER ORDERED that  Plaintiffs' Motion For Order To Show Cause (Doc. No. 379) is denied.  It is

FURTHER ORDERED that the parties shall pay their own costs and attorneys' fees with regard to the four motions addressed in this Order.

DATED at Denver, Colorado, this   20   day of September, 2006.

BY THE COURT:

ZITA L. WEINSHIENK, Senior Judge
United States District Court

12